1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICHARD SCOTT KINDRED,

                    Plaintiff,

          v.

AUDREY KING, et al.,

                    Defendants.

CASE NO. 1:14-cv-01652-AWI-MJS (PC)

**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

**(ECF No. 11)**

**AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS**

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 & 4.) His complaint (ECF No. 1) was dismissed for failure to state a claim, but he was given leave to amend (ECF No. 8). His first amended complaint (ECF No. 11) is before the Court for screening.

## I.    SCREENING REQUIREMENT

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.   PLAINTIFF'S ALLEGATIONS

Plaintiff is detained at Coalinga State Hospital ("CSH"), where the acts giving rise to his complaint occurred. He names the following 23 Defendants: (1) Audrey King, Executive Director, California Department of State Hospitals; (2) Brandon Price, Hospital Administrator; (3) Debra Brown, Assistant Hospital Administrator; (4) Remi Smith, Program Director; (5) Mathew Collins, Assistant Program Director; (6) Marisa Bigot, Unit Supervisor; (7) Samantha Perryman, Unit Supervisor; (8) Lilian Caylan, Psychiatrist; (9) Jeffrey Hasson, Psychologist; (10) Doug Veit, Social Worker; (11) Carolyn Knox,

2

Recreational Therapist; (12) Guadalupe McKenzie, Unit Supervisor; (13) Jeanette Riveria, Psych Tech; (14) Angela Padilla, Psych Tech; (15) Angel Felix, Psych Tech; (16) Cinthia Martinez, Psych Tech; (17) Paul Alkelougie, Psych Tech; (18) Jose Lopez, Unit Shift Lead; (19) Jorge Zavala, Psych Tech; (20) Tom Faina, Director of Central Program Services; (21) Lt. Bernard, Department of Protection Services Officer; (22) Sgt. Kenneth Bel, Department of Protection Services Officer; and (23) Daniel Wagoner, Sr. Patients' Rights Advocate at the California Office of Patients' Rights.

Plaintiff's complaint is 48 pages long and difficult to follow. It alleges a series of discrete and unrelated acts carried out by a variety of individuals. It is not presented as a chronological narrative and appears to include every perceptibly adverse act Plaintiff has experienced in relation to his religious practice, spiritual items, and filing of grievances. The Court herein endeavors to construe Plaintiff's complaint liberally and to summarize it succinctly without repeating the entirety of Plaintiff's 48 page complaint. With that in mind, Plaintiff's allegations may be summarized essentially as follows.

### A.   Overview

Plaintiff is a "practicing Native American." Since May 2014, Defendants have interfered with and denied Plaintiff's right to practice his "way of life" in violation of the First Amendment, "Native American Civil Rights," and the Joint Resolution of 1978. Defendants also violated Plaintiff's due process rights in a variety of ways.

### B.   Grievances

Defendant King denied and failed to properly address grievances Plaintiff filed regarding being unable to participate in Sunrise Ceremonies, Inipi Ceremonies, and Seasonal Ceremonies and regarding spiritual items that were not allowed in the hospital. In so doing, King ignored Plaintiff's rights and failed to address unprofessional and discriminatory acts by employees under her supervision.

Defendant King failed to timely respond to Plaintiff's grievances.

3

Defendants Collins and Veit refused to give Plaintiff copies of responses to his SOC341 (Elder/Dependent Adult Abuse) complaints.

Defendant Wagoner refused to enforce time constraints on the processing of Plaintiff's grievances and refused to provide Plaintiff "denial of rights" forms.

Defendant Hasson refused to file Elder/Dependent Abuse Reports in relation to the denial of Plaintiff's rights.

Defendant Knox refused to provide Plaintiff a denial of rights form.

Defendant Veit refused to document incidents and file Elder/Dependent Abuse Reports. He followed up on one of Plaintiff's Elder/Dependent Abuse complaints but did not give Plaintiff the response.

Defendant Faina refused to provide Plaintiff a denial of rights form.

Plaintiff filed an Elder/Dependent Abuse Claim against Defendant Bell. Defendant Bernard was assigned to investigate the claim. Bernard sided with Bell and ignored Plaintiff's documentation. Bernard never gave Plaintiff a proper response to his claim

### C.    Native American Practices

In April 2014, Defendant Bigot contacted Defendant Smith regarding Plaintiff and other Native Americans using the small unit courtyard at 5:00 a.m. for Sunrise Ceremony. Defendant Smith made a program decision to disallow this practice on safety and security grounds, even though Christians were allowed to hold Sunrise Services in the main courtyard. Defendant Bigot enforced this decision.

In May 2014, Defendant Bigot began harassing Plaintiff and directing other Unit Staff to do the same. She ordered Plaintiff to take down his dream catcher and other items hanging in his room based on the Fire Code. Plaintiff informed Bigot she was misquoting the relevant regulation, but she refused to acknowledge him. Plaintiff was moved from his single room to a dorm shared with three others.

On August 16, 2014 and August 30, 2014, Defendant Smith denied Plaintiff an escort to his Native American Ceremonies/Celebrations. This occurred even though, on

4

August 30, 2014, the Native American Spiritual Advisor requested Plaintiff be escorted to an Inipi Ceremony. Defendant Bigot also was "instrumental" in these decisions. When Plaintiff questioned Smith about the decision, she informed Plaintiff that his "HAS Level" was on hold and the facility was short of staff. She refused to discuss the matter further. Defendant Collins intervened and directed the Shift Lead to provide Plaintiff an escort.

Once Defendant Bigot learned of Defendant Collins' intervention, she retaliated against Plaintiff by denying Plaintiff several sacred/spiritual items that had been approved by Defendant Bell. Plaintiff had to wait until a different Unit Supervisor was assigned to retrieve his items.

On September 5, 2014, Defendant Collins attended a unit meeting and spoke with Plaintiff regarding various problems. Collins agreed to speak with Bigot and to let her know that Plaintiff and other practicing Native Americans would be permitted to use the day room between 5:00 and 5:30 a.m.

On May 23, 2015, Plaintiff was informed that the Shift Lead, non-Defendant Aboloje, was not allowing anyone into the dayroom. Plaintiff requested that the room be opened for prayer in accordance with the approval from Defendant Collins. Aboloje stated that Collins dictated no one was to have access to the dayroom before 6:00 a.m. Plaintiff requested to contact Defendant Perryman but she refused to speak with Plaintiff. The next day, Plaintiff was told that there was a misunderstanding and that Collins would speak with him. However, neither Collins nor anyone else addressed the issue with Plaintiff that day.

### D.      August 29, 2014 Incident/Spiritual Rug

On August 29, 2014, Defendant Riveria entered Plaintiff's room while Plaintiff was in a meditative state and partially undressed. Riveria told Plaintiff she wanted his "HAS Level"; Plaintiff threw it at her. Riveria told Defendant Alkelhougie that Plaintiff assaulted her and left the room laughing. Riveria filed a false police report against Plaintiff.

Defendant Smith refused to discuss this incident with Plaintiff. Instead, Smith directed Defendant Bigot to bring 20-25 staff and officers to Plaintiff's living area. Plaintiff was assaulted. Plaintiff's spiritual rug was confiscated. Proper procedure and policies were not followed in handling Plaintiff's items. Thereafter, Defendant Felix escorted Plaintiff to an exclusion room. When they neared the room, Plaintiff's arms were restrained and Felix reached inside Plaintiff's shirt and grabbed Plaintiff's medicine bag, desecrating it. Plaintiff yelled for Felix to stop, but Felix told Plaintiff he could not have the bag in the room and that it needed to come off. Felix got Plaintiff a plastic bag to put the medicine bag in, but Plaintiff stated that doing so would be pointless because it was desecrated. Plaintiff had to wait for the Native American Spiritual Advisor to bless him a new medicine bag. Medicine bags are intended to last a lifetime and the contents of Plaintiff's original bag cannot be replaced.

Defendant Lopez also was involved in this incident. He used excessive force and failed to follow procedures for handling the morbidly obese or individuals with COPD, resulting in injury to Plaintiff.

Defendant Alkelhougie also was involved in this incident.

On September 5, 2014, Defendant Collins attended a unit meeting and spoke with Plaintiff regarding problems with Defendant Bigot and the confiscation of Plaintiff's prayer rug. Collins agreed to look into the matter of Plaintiff's rug but suggested holding a WRPTM on the issue and including the Native American Spiritual advisor in the determination. Collins admitted to not knowing much about Plaintiff's culture or beliefs.

Plaintiff later discussed the confiscation of his rug with Defendant Smith at a WRPTM. Smith advised Plaintiff that he would be given his rug back on the condition that it be used only four times a day to pray, and otherwise would be rolled up and put against the wall. Plaintiff challenged Smith's ability to dictate his manner of prayer and use of the rug and threatened to file a grievance. Smith refused to discuss the matter

further other than to state that Plaintiff's rug would be restored subject to the stated conditions.

### E.   Confiscation of Property

In November 2013, Plaintiff attempted to retrieve a prayer blanket (an approved item) from his property. Defendant Bell told his officers not to release the blanket. Plaintiff wrote a grievance and, as a result, eventually recovered his blanket.

In July, September, and November of 2014, Plaintiff received spiritual packages from Crazy Crow Trading Post, "a recognized vendor of Native American and Early American materials." Several of his items were denied by Defendant Bell despite not being on the Statewide Property Contraband list. Several of the items in Plaintiff's packages were on the "approved list" for Religious/Spiritual Items but nonetheless were denied. In July 2014, Plaintiff was denied medicines/herbs (on the ground no names were on the packages), a turtle rattle kit, a roll of simulated sinew/string, elk antler (on the ground it was too large), and needles. In September 2014, Plaintiff was denied elk splits and hides, red and off-white cloth, simulated sinew, and needles. Plaintiff filed grievances and eventually was able to receive the red cloth, one of the herbs, and the elk splits/hides, but not the other items. As to the other items, Plaintiff was told they had to be sent back or destroyed. When Plaintiff went to send them back, he found that many of the items were missing. Defendant Bell told Plaintiff that Defendant Brown ordered that most of the items be destroyed. Bell did give Plaintiff his needles. Plaintiff filed a report with the Department of Protective Services.

At a WRPTM, Plaintiff raised with Smith issues concerning the items that he was denied that were not on the Statewide Property Contraband List. Smith advised Plaintiff that non-Defendant Ramos, the Native American Spiritual Advisor, would review the items and determine what Plaintiff could receive. However, property room officers thereafter refused to allow Ramos to remove any of the items, stating that Defendant Bell told them nothing was to be removed. Plaintiff raised this at a WRPTM but "they"

7

said there was nothing they could do. Plaintiff later spoke with Defendant Bell who agreed to release Plaintiff's Elk Splits on the condition that Plaintiff's Unit Supervisor pick them up. Defendant Bigot agreed to pick them up, but instead spoke to Defendant Smith, who refused to allow them. Defendant Smith later agreed to "work it out."

On January 15, 2015, Plaintiff's items were to go to the Statewide Property Contraband Meeting, an "underground sub-review committee" chaired by Defendant Price, co-chaired by Defendant Brown, and of which Defendants Faina and Bell are members. Instead, Defendant Brown determined that, going forward, any religious/spiritual items on the approved list should be given to patients upon delivery of the package. However, Defendant Brown did not specifically address Plaintiff's already-delivered items. Because the items were not specifically addressed, Defendant Bell refused to give them to Plaintiff.

### F.    Elk Hides/Art Class

Plaintiff alleges various due process violations in relation to his elk hides. Plaintiff requested a violation of rights form for his elk hides, but Smith refused to provide one. Smith denied knowledge of the hides for several months until a Unit Meeting wherein Plaintiff explained the situation to the Clinical Administrator. Smith then admitting to having the hides but advised Plaintiff he could only work on them in his spiritual art class and could not remove them until they were completed. Thereafter, Plaintiff receive a letter from the California Office of Patients' Rights stating that he had the right to pray wherever and whenever he wanted if his prayer was done respectfully and without disturbing others. Plaintiff apparently attempted to pray in his art class. However, Plaintiff later was removed from his art class for refusing to sign a contract that would keep him from praying, force him to take classes he was not interested in, force him to participate in treatment, and force him to admit to things that were not true. Smith directed the Unit Supervisor to confiscate the hides until Plaintiff signed the contract. Smith refused to

return the hides, even when told to do so by the Office of Patients' Rights. Smith again refused to give Plaintiff a denial of rights form.

Defendants Knox and Veit failed to hold a WRPTM regarding Plaintiff's removal from art class and the requirements for being allowed to return.

Defendant Knox at one point had Plaintiff's elk hides but did not tell Plaintiff. She was directed by Defendant Smith to put them back into Plaintiff's property.

### G.      Room Searches and Handling of Spiritual Items

From May 2014 to December 2014, Defendant Bigot and her "underlings" failed to abide by the following policies applicable to the search of Native American patients' rooms: having a spiritual advisor supervise the search, staff does not handle sacred items, and no women involved in the search during "their time of the month." Defendant Alkelhougie participated in the searches.

In July and August 2014, Defendants Riveria, Padilla, and Martinez repeatedly searched Plaintiff's sacred, spiritual items and disrespected Plaintiff's desire that said items not be handled or confiscated.

From August 2014 to November 2014, Defendant Zavala allowed staff under his supervision to search Plaintiff's living area.

Defendant Alkelhougie searched Plaintiff's room on December 29, 2014. Plaintiff protested and was thrown against the wall. Plaintiff's spiritual bat also was thrown against the wall. Alkelhougie and Defendant Smith held Plaintiff while someone else disrespected Plaintiff's spiritual items.

On December 30, 2014, Defendant Perryman directed staff to search Plaintiff's living area for possible contraband. Plaintiff requested a spiritual advisor but was refused. Plaintiff was threatened with restraint. Plaintiff grabbed his sacred hawk wing, showed it to Defendants Perryman, Alkelhougie, and others, and placed it on his bed. He was restrained while Alkelhougie searched under his bed and mattress. When Alkelhougie got up off the floor, he put his hands on the hawk wing and broke it.

Alkelhougie is too overweight to safely work at the institution. Plaintiff requested a denial of rights form and was denied. The following items were confiscated: Plaintiff's birth certificate (sent to the trust office), a typewriter (thrown away), two small wooden handles, and Plaintiff's bank deposit slip. Plaintiff was told the bank deposit slip went to the trust office. He filed a claim for it but never received a response.

Defendant Veit contacted the confiscating officer and Chief of Police on Plaintiff's behalf but received no response.

### H.   Other

Defendant Caylan participated in disallowing Plaintiff's attendance at ceremonies, pulled his HAS Level, confiscated and denied his spiritual rug for two weeks, and signed orders to have Plaintiff placed in seclusion.

Defendant Hasson participated in disallowing Plaintiff's attendance at ceremonies, pulled his HAS Level, and confiscated and denied his spiritual rug for two weeks.

Defendant Knox participated in disallowing Plaintiff's attendance at ceremonies, pulled his HAS Level, and confiscated and denied his spiritual rug for two weeks.

Defendant McKenzie participated in illegal searches of Plaintiff's living area and placed a hold on Plaintiff's HAS Level, and allowed her subordinates to do the same.

Defendant Martinez participated in illegal searches of Plaintiff's living area, held Plaintiff's HAS Level, made false entries in Plaintiff's hospital records, and possibly threw away a dream catcher Plaintiff made for Defendant McKenzie. Martinez refused to work in the same office as McKenzie if McKenzie was allowed to hang up a dream catcher from Plaintiff.

Defendant Zavala failed to provide Plaintiff escorts to the law library.

Defendant Faina approved the confiscation of Plaintiff's spiritual rug and restrictions on Plaintiff.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### I.    Relief Sought

Plaintiff seeks compensatory and punitive damages. He also seeks the following injunctive relief: demotion of Defendant Bell, termination of Defendants Smith and King, various changes to grievance handling procedures, specific procedures for handling patient packages, compliance with all federal and state laws and regulations, and a requirement that all policies, procedures, special orders and administrative directives be properly promulgated.

### IV.    ANALYSIS

Plaintiff's first amended complaint suffers from many of the same deficiencies as his original complaint. The Court will again advise Plaintiff of the legal standards applicable to his claims. Plaintiff will be given **one final opportunity** to amend his complaint to cure noted defects. If he chooses to amend, he must state facts to meet the elements and the legal standards set forth below.

### A.    Improper Joinder of Unrelated Claims

Federal Rule of Civil Procedure 18(a) allows a party to "join, as independent or alternative claims, as many claims as it has against an opposing party." However, Rule 20(a)(2) permits a plaintiff to sue multiple defendants in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is a "question of law or fact common to all defendants." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . ." See George v. Smith, 507 F.3d 605, 607 (7th Cir.2007) (citing 28 U.S.C. § 1915(g)).

Plaintiff attempts to bring several unrelated claims in this action. His allegations span from November 2013 to May 2015. They involve numerous unrelated incidents: room searches, WRPTM meetings, art classes, property seizures, interference with

grievances, inability to attend ceremonies, and at least one alleged use of force. The incidents also involve a disparate array of defendants. While at least some of Plaintiff's claims regarding his Native American practices appear to arise out of the same transaction or occurrence, or to at least raise a common question of law or fact, these claims plainly do not arise out of the same transaction or occurrence as Plaintiff's allegations that certain Defendants interfered with his ability to file administrative grievances or legal claims, his allegations regarding Elder/Dependent Adult Abuse, or his allegations regarding false police reports. Plaintiff may not bring all of these claims in a single action.

Plaintiff previously was advised of this defect in the Court's initial screening order. Instead of limiting his amended pleading to those claims arising out of a single transaction or occurrence, Plaintiff added additional claims and Defendants.

The Court will focus its analysis herein on what appear to be the primary, core claims regarding denial of a First Amendment right to freely practice religion and a Fourteenth Amendment right to property related to that practice. If Plaintiff chooses to amend his complaint, he should focus his efforts on presenting cognizable allegations pertaining to these claims. **A repeat attempt to include multiple disparate claims previously alleged may well prove fatal to Plaintiff's case.**

### B.    First Amendment Free Exercise

Plaintiff alleges a variety of Free Exercise violations against numerous Defendants.

Civil detainees retain the protections afforded by the First Amendment, including the right to freely practice their religion. See O'Lone v. Estate of Shabazz, 482 U.S. 347, 348 (1987) (citations omitted); see also Youngberg v. Romero, 457 U.S. 307, 322 (1982) (holding civilly detained persons must be afforded "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). In order to establish a cause of action under the Free Exercise Clause,

12

Plaintiff must show that a restriction substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

Additionally, Plaintiff must show that the restriction is not required to maintain institutional security and preserve internal order and discipline. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Restrictions on access to "religious opportunities" must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right" that remain open to Plaintiff; (3) whether accommodation of the asserted constitutional right would have a significant impact on staff and other detainees; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc). Furthermore, to satisfy substantive due process requirements with respect to detainees, the restriction or regulation cannot be intended to serve a punitive interest. Bell v. Wolfish, 441 U.S. 520, 535 (1979).

As an initial matter, Plaintiff is advised that the Free Exercise clause protects Plaintiff's ability to freely practice his religion. However, Plaintiff does not expressly state that Defendants interfered with his religious practice. Instead, Plaintiff states that Defendants interfered with his "way of life." Plaintiff's "way of life" is not protected by the First Amendment. In order to state a Free Exercise claim, Plaintiff must allege that Defendants' conduct substantially burdened "the practice of his religion." Shakur, 514 F.3d at 884-85 (emphasis added). For the purposes of this screening order, the Court will liberally construe the complaint and assume that Plaintiff's allegations refer to his religion. However, if Plaintiff chooses to amend, he should address this requirement directly.

13

Plaintiff's allegations list numerous wrongs he suffered in relation to his spiritual practice. He does not state whether or how such wrongs substantially burdened the practice of his religion. This failure is fatal to Plaintiff's claims. Absent such allegation, he fails to state a claim. If he chooses to amend, he must specifically allege how his ability to practice his religion was substantially burdened.

The Court notes that, in many instances, the wrongs Plaintiff complains of were quickly remedied. For example, although one defendant initially refused to provide Plaintiff an escort to a ceremony, another defendant eventually did provide an escort. Thus, it appears that Plaintiff was able to participate in the ceremony and his religious practice was not, in fact, burdened in this instance. Absent further facts to indicate a substantial burden on the practice of his religion, Plaintiff's allegations regarding wrongs that promptly were remedied fail to state a claim.

Lastly, the Court notes that, in several instances, Defendants justified restrictions on Plaintiff's conduct on safety and security grounds. Restrictions that are required to maintain institutional security and preserve internal order are justified under the First Amendment. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Plaintiff must allege that the proffered justifications were, in fact, not necessary.

## C.     Due Process – Property Seizure

Plaintiff appears to allege that his Due Process rights were violated when his spiritual packages were denied.

The Due Process Clause protects Plaintiff from being deprived of property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). While the deprivation of property pursuant to an established government procedure is actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)),[1] neither negligent nor

---

[1] An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir.1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir.1987).

unauthorized intentional deprivations of property by a governmental employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." Hudson, 468 U.S. at 533.

Plaintiff's property claims appear to fall into four categories: (1) property that eventually was turned over to him, (2) property that was turned over to him, but with conditions regarding its use, (3) property that was denied him, and (4) property that was destroyed.

Plaintiff does not state a due process claim with regard to property that eventually was turned over to him, regardless of whether staff placed conditions on its use. Plaintiff filed grievances regarding these items or otherwise presented his concerns through procedural channels, and eventually received the property. He ultimately was not deprived of this property, let alone deprived of it without due process. Plaintiff may be able to state a Free Exercise claim regarding delays or restrictions relating to this property, but to do so he must meet the legal standards described above for a Free Exercise claim.

Plaintiff fails to state a claim with regard to property that was destroyed. Plaintiff states that, when the property was confiscated, he filed a grievance. Through the grievance process, Plaintiff was advised that the property must be returned to its sender or destroyed, presumably because it was determined to be contraband. It therefore appears that Plaintiff had notice and an opportunity to be heard regarding the deprivation of this property. He has not alleged facts to suggest that he was denied proper procedural protections. Furthermore, to the extent the items may have been mistakenly destroyed, such destruction fails to state a claim. Hudson, 468 U.S. at 533 (negligent deprivation of property does not state a claim, so long as post-deprivation remedy is available); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (post-deprivation remedy available under California law).

Although not entirely clear from the complaint, it appears that some of Plaintiff's property may have been withheld from Plaintiff without due process. Plaintiff explains that some, unspecified property was scheduled to be considered before the Statewide Property Contraband Meeting. Such meeting, had it been held, might have afforded Plaintiff the requisite procedural protections. However, Plaintiff states that the meeting was never held and, as such, no official determination was made with respect to this property. Thereafter, Defendant Bell refused to give Plaintiff the property. However, it is not entirely clear whether Plaintiff was entirely deprived of this property or whether he was temporarily denied the property by Defendant Bell. Based on this lack of clarity, the Court cannot conclude that this allegation states a claim. If Plaintiff chooses to amend, he should specify which property was denied him and by whom, whether and how he sought to obtain it following the cancellation of the Meeting, and any grievances or hearings conducted in relation to this property.

### D.    Improper Handling of Grievances

Plaintiff alleges several Defendants improperly handled his administrative grievances. Specifically, Defendant King failed to timely respond to Plaintiff's grievances; Defendants Collins, Veit, Hasson, and Knox refused to give Plaintiff copies of responses to his SOC341 (Elder/Dependent Adult Abuse) complaints; Defendants Bernard and Veit did not respond to Plaintiff's complaints; Defendant Wagoner refused to enforce time constraints on the processing of Plaintiff's grievances; and Defendants Knox, Faina and Wagoner (and, perhaps, other individuals) refused to provide Plaintiff "denial of rights" forms. These allegations do not state a claim under section 1983.

### 1.    No Due Process Right to Grievance Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, Plaintiff has no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850,

860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a grievance or denying a grievance does not constitute a due process violation.   See, e.g., Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, No. 1;09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

### 2.   Insufficient Facts to State Access to Courts Claim

To the extent the failure to properly process grievances may have interfered with Plaintiff's ability to pursue legal remedies, Plaintiff may be able to state an access to courts claim. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). A plaintiff must show that he suffered an "actual injury" by being shut out of court. Lewis v. Casey, 518 U.S. 343, 350-51 (1996). An "actual injury" is one that hinders the plaintiff's ability to pursue a legal claim. Id. at 351.

Plaintiff has not here alleged that his ability to pursue a legal claim has been hindered. He fails to state an access to courts claim.

### 3.   Insufficient Facts to Allege Contribution to Violations

Plaintiff also attempts to allege constitutional violations by those who reviewed his grievances. Specifically, he alleges that Defendant King failed to properly address his grievances, ignored Plaintiff's rights and did not address unconstitutional conduct by her subordinates. Plaintiff also alleges that Defendant Bernard ignored Plaintiff's documentation and sided with Defendant Bell on one of Plaintiff's complaints.

1
2
3
4
5
6
7

Generally, denying an administrative appeal does not cause or contribute to the underlying violation. Peralta v. Dillard, 744 F.3d 1076, 1086-87 (9th Cir. 2014); George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). However, administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), and there may be limited circumstances in which those involved in reviewing an administrative appeal can be held liable under section 1983.  That circumstance has not been presented here.

8
9
10
11
12
13
14

Plaintiff's conclusory allegation that Defendants King and Bernard failed to properly address his complaints or agree with his contentions is insufficient to support a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss, 572 F.3d at 969. As an initial matter, Plaintiff has not shown that a constitutional violation occurred with respect to any of the issues grieved. Additionally, Plaintiff has provided insufficient detail regarding the information presented to Defendants through the grievance process to show that they willfully turned a blind eye to any constitutional violations.

15

**E.      Equal Protection**

16
17
18

Plaintiff alleges he was denied the right to perform Sunrise Prayer Ceremonies in the small courtyard even though other religions were allowed to do so in the main courtyard. In this regard, Plaintiff may intend to allege an Equal Protection claim.

19
20
21
22
23
24
25
26
27

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of

28

Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). To allege a religious discrimination claim, Plaintiff must allege facts sufficient to show that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam).

Plaintiff has not alleged that any of the Defendants intentionally discriminated against him on the basis of his religion or that he was not provided a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Although Plaintiff alleges that he was prevented from engaging in Sunrise Prayer Ceremonies in a similar manner to other groups, he has not stated whether he was provided other reasonable opportunities to conduct such ceremonies or otherwise pursue his faith.

### F.     Linkage

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff has not alleged any unconstitutional conduct on the part of Defendant Collins. Indeed, it appears that Collins was responsible for resolving many of Plaintiff's

issues with other staff. The Court cannot ascertain any basis for liability on the part of Collins.

The only allegation against Defendant Price is that he participated in an "underground sub-review committee" for contraband property. However, Plaintiff states that his confiscated property ultimately was not reviewed by this committee. Thus, Plaintiff fails to explain how this Defendant may have participated in the violation of his rights.

### G.   False Police Report

Plaintiff already was advised that his allegation that Defendant Rivera filed a false police report against him is insufficient to state a claim. The Ninth Circuit has recognized "a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001); see also Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111-12 (9th Cir. 2010) (relying on Devereaux to hold that a state investigator "who deliberately mischaracterizes witness statements in her investigative report also commits a constitutional violation"). To state such a claim, Plaintiff must point to evidence that supports at least one of the following two propositions: "(1) Defendants continued their investigation of [Plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Devereaux, 263 F.3d at 1076. He has not done so. Plaintiff was advised of this defect but nonetheless has  not alleged such facts, nor has he alleged whether he was subjected to criminal charges.

### H.   Excessive Force

The Due Process Clause protects Plaintiff from the use of excessive force that amounts to punishment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th

Cir. 2002) (citing Graham, 490 U.S. at 395 n.10). In resolving claims of excessive force brought by detainees, the Fourth Amendment's objective reasonableness standard applies. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Andrews v. Neer, 253 F.3d 1052, 1061-62 (9th Cir.2001). In applying this standard, "a court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of [staff] are needed to preserve internal order and discipline and to maintain institutional security. Kingsley, 135 S. Ct. at 2473 (internal quotation marks and brackets omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)).

"Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

Plaintiff states that excessive force was used against him during the August 29, 2014 search of his room, and that he was injured. However, he provides no greater details regarding this incident. Plaintiff's conclusory statement that excessive force was used against him is insufficient to state a claim. This is particularly true where, as Plaintiff admits, the incident was precipitated by Plaintiff throwing something at staff.

## I.   Native American Civil Rights

Plaintiff alleges that Defendants have violated his "Native American Civil Rights." To the extent Plaintiff intends to allege a violation of the Indian Civil Rights Act of 1968, 15 U.S.C. §§ 1301-1304, his allegations fail to state a claim. The Act provides relief from tribal action that violates certain specified civil rights. Here, Plaintiff raises no allegations of tribal action. And, in any event, the only federal cause of action available to enforce the Indian Civil Rights Act is a petition for writ of habeas corpus filed under 25 U.S.C.

§ 1303, a remedy not implicated in this action. <u>Boe v. Fort Belknap Indian Community of Ft. Belknap Reservation</u>, 642 F.2d 276, 278-79 (9th Cir.1981).

### J.    Joint Resolution of 1978

Plaintiff alleges that Defendants' conduct violates the Joint Resolution of 1978. Presumably, this is a reference to the American Indian Religious Freedom Act ("AIRFA"), enacted by a joint resolution of Congress in 1978. "The AIRFA is a joint resolution of Congress that establishes the 'policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise [their] traditional religions . . . , including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.'" <u>Henderson v. Terhune</u>, 379 F.3d 709, 715 (9th Cir. 2004) (citing 42 U.S.C. § 1996).

The Supreme Court has held that the AIRFA is simply a policy statement that is judicially unenforceable. <u>Lyng v. Northwest Indian Cemetery Protective Ass'n</u>, 485 U.S. 439, 455 (1988). Accordingly, Plaintiff cannot state a claim under the AIRFA.

## V.    CONCLUSION AND ORDER

The first amended complaint does not state a cognizable claim for relief. The Court will provide Plaintiff with **one final** opportunity to file an amended complaint that cures the noted deficiencies. <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, **his amended complaint should be brief.** Fed. R. Civ. P. 8(a). Plaintiff should focus his attention on curing the deficiencies described in this screening order.

Plaintiff further is advised that he may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007). Finally, an amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 927 (9th Cir. 2012), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint (ECF No. 11) is DISMISSED for failure to state a claim upon which relief may be granted,

2. The Clerk's Office shall send Plaintiff a blank civil rights amended complaint form and a copy of his first amended complaint filed June 18, 2015,

3. Within thirty (30) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and

4. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, this action will be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim.

IT IS SO ORDERED.


Dated:   June 2, 2016                              /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE