UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SCOTT KINDRED,<br><br>  Plaintiff,<br><br>  v.<br><br>AUDREY KING, et al.,<br><br>  Defendants. | CASE No. 1:14-cv-01652-AWI-MJS (PC)<br><br>**FINDING AND RECOMMENDATIONS (1) FOR SERVICE OF COGNIZABLE FIRST AMENDMENT CLAIMS AGAINST DEFENDANTS BELL AND BIGOT AND (2) TO DISMISS ALL OTHER CLAIMS AND DEFENDANTS**<br><br>**(ECF NO. 15)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 & 4.) His complaint (ECF No. 1) and first amended complaint (ECF No. 11) were dismissed for failure to state a claim, but he was given leave to amend, (ECF No. 12). His first amended complaint (ECF No. 15) is before the Court for screening.

**I.  Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if

the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

Plaintiff is detained at Coalinga State Hospital ("CSH"), where the acts giving rise to his complaint occurred. He names the following Defendants: (1) Audrey King, Executive Director, California Department of State Hospitals; (2) Remi Smith, Program Director; (3) Marisa Bigot, Unit Supervisor; (4) Samantha Perryman, Unit Supervisor;

2

(5) Jeffrey Hanson, Psychologist; (6) Jeanette Riveria, Senior Psych Technician; (7) Angel Felix, Psych Technician; (8) Paul Alkelougie, Senior Psych Technician; (9) Jose Lopez, Senior Psych Technician; (10) Lt. Bernard, Office of Protective Services; (11) Lt. Kenneth Bell, former property room sergeant; (12) Brandon Price, Administrative Director, California Department of State Hospitals; and (13) Daniel Wagner, Sr. Patients' Rights Advocate at the California Office of Patients' Rights.

He claims violations of his First Amendment free exercise rights, and his Fifth and Fourteenth Amendment rights to Due Process and Equal Protection. He seeks compensatory damages and unspecified injunctive relief.

His allegations may be summarized essentially as follows.

**A.  First Amendment Allegations**

**1.  Audrey King**

Since May 2014, Defendants have interfered with and denied Plaintiff's right to practice his religion as a Native American. During that time, Defendant King was aware that "several individuals" were "allegedly" violating Plaintiff's First Amendment rights, yet did nothing to intervene or take corrective action.

**2.  Remi Smith**

Beginning in May 2014, Defendant Smith began prohibiting Native Americans from using the courtyard in their unit for Sunrise Ceremonies. She did this even though, in the three preceding years, there were no incidents. There were no security risks involved in this practice. This prohibition continues to this day. Other religions are allowed to hold services in the main courtyard which, according to Plaintiff, involves greater security risks.

On August 16, 2014 and August 30, 2014, Defendant Smith denied Plaintiff an escort to his Native American Ceremonies/Celebrations. This occurred even though the

3

Native American Spiritual Advisor requested Plaintiff be escorted to the ceremonial grounds.[1]

### 3. Kenneth Bell

According to Plaintiff, Defendant Bell denied Plaintiff sacred/spiritual items on three occasions.

On July 30, 2014, Bell denied Plaintiff medicines and/or herbs that "are used in the daily practice of his religion." The denied items are allowable under the California Department of State Hospitals' Administrative Directives.

Between September 10 and 15, 2014, Bell denied Plaintiff needles and herbs that also are allowable under the Administrative Directives.

Between November 12 and 20, 2014, Bell denied Plaintiff needles and an herb used in daily ceremonies and also approved under the Administrative Directives.

### 4. Marisa Bigot

Bigot harassed Plaintiff and interfered with his ceremonies and religious expression, and encouraged her subordinates to do the same, as follows:

From May 2014 to December 15, 2014, she "harassed" Plaintiff while he was praying or meditating in his living area and encouraged her staff to do the same.

In May 2014 Bigot entered Plaintiff's room and threatened to confiscate his dream catcher. Plaintiff showed her and the Fire Chief that the dream catcher was in compliance with the fire code. In retaliation, Bigot moved Plaintiff from a single room to a four person dorm.

During September and November (Plaintiff does not specify the year), Bigot denied Plaintiff approved items that he was allowed to have because she did not want him to have them.

---

[1] In Plaintiff's first amended complaint, he stated that someone else intervened and directed that Plaintiff be provided an escort. This fact is omitted from the second amended complaint.

### 5. Jeanette Riveria

Rivera "constantly" entered Plaintiff's living area, "harassed" him, and interfered with his prayer and meditation.

From May to December 2014, Rivera "constantly" entered Plaintiff's room during prayer or meditation to conduct a search of complain that his prayer rug was on the floor.

In August 2014, Defendant Riveria entered Plaintiff's room while he was praying. Plaintiff was wrapped in a blanket and partially undressed. Rivera screamed about Plaintiff's prayer rug being on the floor and demanded his Hospital Assessment System ("HAS") Level. Because Plaintiff was partially undressed, he threw it at her. Rivera later claimed that Plaintiff threw the Level at her striking her in the face. As a result, Plaintiff was assaulted by staff members, lost his Level, and was placed in seclusion.

### 6. Angel Felix

Felix desecrated Plaintiff's medicine bag, which is a spiritual item. This occurred while Plaintiff was being restrained by other staff. Felix reached inside the back of Plaintiff's shirt and grabbed the medicine bag to remove it. Plaintiff warned Felix that Felix could not handle the medicine bag because it was sacred. According to Plaintiff, this prohibition also is memorialized in hospital administrative directives regarding the search of sacred or spiritual items.

### 7. Paul Alkelougie

Alkelougie disrespected Plaintiff's First Amendment rights and hospital policies as follows:

On August 29, 2014, he interrupted Plaintiff's prayer and meditation and used unnecessary force against Plaintiff. Plaintiff was injured because Alkelougie did not follow hospital policies on restraining individuals who are morbidly obese and who have C.O.P.D.

In February 2015, Alkelougie conducted an illegal and retaliatory search of Plaintiff's bed area. Plaintiff placed a sacred hawk wing in the middle of his bed in order to protect it. While Alkelougie was getting up from the floor, he placed his arms and,

5

resultantly, all of his weight, on the wing and broke it. This occurred despite Plaintiff's warnings regarding the wing.

### B. Fourteenth Amendment Allegations

#### 1. Audrey King

Defendant King did not adhere to deadlines for responding to Plaintiff's Office of Patient Rights grievances. She also failed to ensure that staff adhered to Special Orders, Administrative Directives, and the California Code of Regulations.

#### 2. Remi Smith

Smith denied Plaintiff his leather and refused to provide Plaintiff a denial of rights form.

Smith advised Plaintiff he could only work on his leather in a supervised art group. She stated that, once the leather was completed, it would remain in the possession of the spiritual advisor unless it was being used for ceremonies. Other Native Americans and other religions were allowed to keep religious items in their possession.

When Plaintiff began participating in the art class, it was only for Native Americans. However, it later was changed to allow other religions to participate and then problems arose. Plaintiff was no longer allowed to open the class with prayer. He filed a grievance on this issue and it was determined that Plaintiff could pray so long as he was respectful. Also, only Christian or "worldly" music was permitted during the class. When Plaintiff filed a grievance, unspecified facilitators wrote false notes regarding Plaintiff to have him removed from the class. Based on these allegations, Plaintiff was told that he could no longer participate in the class unless he signed a contract and first took other classes. Plaintiff claims that these requirements were illegal and violated his right to access to treatment.

#### 3. Daniel Wagoner

Wagoner failed to protect Plaintiff's right to file grievances with the Office of Patient's Rights and to have such grievances responded to timely.

**IV.  Analysis**

    **A.  Improper Joinder of Unrelated Claims**

Federal Rule of Civil Procedure 18(a) allows a party to "join, as independent or alternative claims, as many claims as it has against an opposing party." However, Rule 20(a)(2) permits a plaintiff to sue multiple defendants in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is a "question of law or fact common to all defendants." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . ." See George v. Smith, 507 F.3d 605, 607 (7th Cir.2007) (citing 28 U.S.C. § 1915(g)).

Plaintiff once again brings several unrelated claims in this action. His allegations involve seemingly unrelated incidents: room searches, art classes, property seizures, interference with grievances, inability to attend ceremonies, and at least one alleged use of force. The incidents also involve an array of defendants. The mere fact that the allegations relate to an alleged violation of the same constitutional right – i.e., the First Amendment -- is insufficient to support joinder. Plaintiff simply may not bring disparate claims against disparate defendants in a single action.

Plaintiff previously was advised of this defect in the Court's two prior screening orders. He nonetheless has failed to limit his second amended complaint to those claims arising out of the same transaction or occurrence. Nonetheless, because few of these disparate claims appear to be cognizable, the Court will proceed with screening all of the stated claims.

    **B.  First Amendment Free Exercise**

Civil detainees retain the protections afforded by the First Amendment, including the right to freely practice their religion. See O'Lone v. Estate of Shabazz, 482 U.S. 347, 348 (1987) (citations omitted); see also Youngberg v. Romero, 457 U.S. 307, 322 (1982)

7

(holding civilly detained persons must be afforded "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). In order to establish a cause of action under the Free Exercise Clause, Plaintiff must show that a restriction substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

Additionally, Plaintiff must show that the restriction is not required to maintain institutional security and preserve internal order and discipline. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Restrictions on access to "religious opportunities" must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right" that remain open to Plaintiff; (3) whether accommodation of the asserted constitutional right would have a significant impact on staff and other detainees; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc). Furthermore, to satisfy substantive due process requirements with respect to detainees, the restriction or regulation cannot be intended to serve a punitive interest. Bell v. Wolfish, 441 U.S. 520, 535 (1979).

**1.    Remi Smith**

Plaintiff alleges that Smith disallowed him and other Native Americans from using their unit courtyard for Sunrise Ceremonies, even though other religions were permitted to use the main courtyard for such ceremonies. However, he does not state that he was precluded from engaging in such ceremonies altogether, only that he could not do so in a particular location. Accordingly, he fails to allege that the practice of his religion was substantially burdened by this conduct. See Guru Nanak Sikh Soc. of Yuba City v. Cty.

of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) ("[A] substantial burden must place more than an inconvenience on religious exercise.") (internal quotation omitted)).

Plaintiff alleges that Smith denied Plaintiff an escort to his Native American Ceremonies/Celebrations on two occasions. However, in his prior complaint, Plaintiff acknowledged that he eventually was provided an escort. As stated in the Court's prior screening order, it appears that Plaintiff was able to participate in the ceremony and his religious practice was not, in fact, burdened in this instance. Although instructed to do so, Plaintiff has alleged no further facts to indicate a substantial burden on the practice of his religion.

Plaintiff alleges Smith limited him to accessing his "leather" during art class and ceremonies. Plaintiff characterizes this conduct as a due process violation. While Plaintiff clearly disagrees with the limitation, he does not explain whether or how this burdened his religious exercise.

Plaintiff alleges he was, for a time, not permitted to open his art class with prayer and that only Christian or "worldly" music was played during class. Plaintiff characterizes this conduct as a due process violation. He does not attribute these violations specifically to Smith. In any event, he does not explain whether or how this conduct substantially burdened his religious exercise.

Plaintiff fails to allege that Defendant Smith's conduct substantially burdened his ability to engage in conduct consistent with his faith. Plaintiff twice has been advised of this requirement but nonetheless fails to allege sufficient facts to state a claim. Further leave to amend should be denied.

**2.     Kenneth Bell**

According to Plaintiff, Defendant Bell denied Plaintiff sacred/spiritual items on three occasions. The items are used in the daily practice of his religion and are allowable under hospital administrative directives.

This allegation is sufficient to state a claim against Defendant Bell. According to Plaintiff, he was denied spiritual or sacred items that are used in the daily practice of his religion and that do not implicate safety and security concerns.

The Court will recommend that Plaintiff be permitted to proceed on this claim.

### 3.     Marisa Bigot

Plaintiff's general claims that Bigot "harassed" him while he was praying or meditating is too conclusory to state claim. Plaintiff fails to provide any detail regarding these interactions and whether they may have been motivated by safety or security concerns.

Plaintiff states that Bigot threatened to confiscate his dream catcher because it was in violation of the fire code. According to Plaintiff, however, there was no fire code violation. In any event, Plaintiff does not allege that his dream catcher was confiscated. He therefore does not allege that the exercise of his religion was burdened.

Plaintiff alleges that Bigot denied him spiritual items he was permitted to have simply because she did not want him to have them. This allegation, **and only this allegation,** is sufficient to state a claim against Defendant Bigot. As with Defendant Bell, Plaintiff alleges that he was denied spiritual or sacred items that are used in the practice of his religion and that do not implicate safety and security concerns. The Court will recommend that Plaintiff be permitted to proceed on this claim.

### 4.     Jeanette Rivera

Plaintiff's general allegations that Rivera "constantly" entered Plaintiff's living area, "harassed" him, and interfered with his prayer and meditation are too conclusory to state a claim. This is particularly true in light of Plaintiff's allegation that these intrusions were in the context of searches of Plaintiff's room, which implies a legitimate security interest.

Plaintiff specifically complains of an August 2014 incident in which Riviera demanded Plaintiff's HAS Level, Plaintiff threw the level at her, and Rivera reported the incident, resulting in a loss of Plaintiff's privileges. Again, the facts alleged by Plaintiff suggest a legitimate security interest underlying this encounter.

The allegations fail to allege facts to suggest that Riviera's conduct unreasonably burdened Plaintiff's religious exercise.

### 5. Angel Felix

Plaintiff alleges that Felix desecrated Plaintiff's medicine bag while trying to remove it when Plaintiff was restrained. Although not specifically stated in the second amended complaint, Plaintiff's prior complaint alleged that this occurred in the aftermath of the incident with Defendant Riviera, when Plaintiff was taken to an exclusion room where his medicine bag was not permitted.

Plaintiff's allegations regarding the desecration of his medicine bag are sufficient to allege a burden on his religious exercise. However, he has not alleged facts to suggest that this action was unsupported by legitimate safety concerns. Plaintiff's reference to policies governing the general search of such objects does not appear applicable to the specific circumstances presented here.

### 6. Paul Alkelougie

Plaintiff alleges that Alkelougie used "unnecessary" force against him. Plaintiff states no facts to indicate that this conduct burdened his religious exercise. Therefore, this allegation is addressed below as a potential Fourteenth Amendment violation.

Plaintiff also alleges that Alkelougie damaged a sacred hawk wing while getting up from the floor in Plaintiff's room. This single, inadvertent action does not support a constitutional claim. Combs v. Washington, No. 14-35821, 2016 WL 4537902, at *1 (9th Cir. Aug. 31, 2016) (no constitutional violation where conduct was sporadic, unintentional, and inadvertent); Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) (holding that "short-term and sporadic" interference with free exercise rights does not violate the First Amendment).

Plaintiff fails to state a claim against Alkelougie.

### C. Improper Handling of Grievances

Plaintiff alleges several Defendants improperly handled his administrative grievances. Specifically, Defendant King failed to timely respond to Plaintiff's grievances,

11

address Plaintiff's concerns, and ensure that policies, procedures, and regulations were followed. Defendant Smith failed to give Plaintiff a "denial of rights" form. Defendant Wagoner refused to enforce time constraints on the processing of Plaintiff's grievances. As Plaintiff has been advised, these allegations do not state a claim under section 1983.

### 1.   No Due Process Right to Grievance Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, Plaintiff has no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a grievance or denying a grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, No. 1;09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Plaintiff's allegations that he was not provided specific forms and that his concerns were not timely addressed do not state a constitutional claim. These defects cannot be cured through amendment.

### 2.   Insufficient Facts to Allege Contribution to Violations

Generally, denying an administrative appeal does not cause or contribute to the underlying violation. Peralta v. Dillard, 744 F.3d 1076, 1086-87 (9th Cir. 2014); George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). However, administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), and there may be limited circumstances in which those involved in reviewing an administrative appeal can be held liable under section 1983.  That circumstance has not been presented here.

Plaintiff's conclusory allegation that Defendant King failed to properly address or ensure her subordinate's compliance with law or policy is insufficient to support a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss, 572 F.3d at 969. Plaintiff provides no detail regarding the content of his grievance or the alleged violations King failed to address. He has not shown that a constitutional violation occurred with respect to any of the issues grieved. Plaintiff has not shown that King willfully turned a blind eye to any constitutional violations.

Plaintiff previously was advised of these defects and has failed to remedy them. Further leave to amend appears futile and should be denied.

### D.     Equal Protection

Plaintiff alleges he was denied the right to perform Sunrise Prayer Ceremonies in the small courtyard even though other religions were allowed to do so in the main courtyard. He also alleges that he was temporarily precluded from praying at the start of art class, although Christians were not, and that only Christian or "worldly" music was allowed during class. It appears Plaintiff intends to allege an Equal Protection claim.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). To allege a religious discrimination claim, Plaintiff must allege facts sufficient to show that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz v. Beto,

1  405 U.S. 319, 321-22 (1972) (per curiam).

With regard to Sunrise Prayer Ceremonies, Plaintiff has not alleged that any of the Defendants intentionally discriminated against him on the basis of his religion or that he was not provided a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Although Plaintiff alleges that he was prevented from engaging in Sunrise Prayer Ceremonies in a similar manner to other groups, he has not stated whether he was provided other reasonable opportunities to conduct such ceremonies or otherwise pursue his faith. He previously was advised of this requirement but nonetheless fails to state a cognizable claim.

Plaintiff adds a new claim regarding Christian prayer and Christian music during his art class. With regard to prayer, Plaintiff alleges that, at some point, Christians were permitted to pray at the start of class but Plaintiff was not. Plaintiff later was told that he could pray, so long as he did so respectfully. Additionally, other Native Americans were permitted to pray during this period. These facts do not suggest intentional discrimination on the basis of Plaintiff's religion, but instead other issues with Plaintiff's conduct. And, Plaintiff does not allege he was denied other comparable opportunities to pursue his faith. Indeed, it appears from Plaintiff's complaint that he had frequent and regular opportunities to engage in prayer. Finally, Plaintiff does not identify the person or persons responsible for this decision, and therefore fails to link any defendants to this alleged violation.

Plaintiff's complaint regarding Christian music similarly is not linked to any defendant. Nor does Plaintiff allege facts to suggest intentional discrimination or that he was denied other comparable opportunities to pursue his faith. This allegation therefore fails to state a claim.

Plaintiff previously was advised of the legal standard applicable to his claims but has failed to allege additional facts that would suggest an Equal Protection violation. Further leave to amend appears futile and should be denied.

**E.     Excessive Force**

Plaintiff does not specifically state his intent to bring an excessive force claim. At the same time, however, he states that Defendant Alkelhougie used "unnecessary" force against him, resulting in injury.

The Due Process Clause protects Plaintiff from the use of excessive force that amounts to punishment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (citing Graham, 490 U.S. at 395 n.10). In resolving claims of excessive force brought by detainees, the Fourth Amendment's objective reasonableness standard applies. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Andrews v. Neer, 253 F.3d 1052, 1061-62 (9th Cir.2001). In applying this standard, "a court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of [staff] are needed to preserve internal order and discipline and to maintain institutional security. Kingsley, 135 S. Ct. at 2473 (internal quotation marks and brackets omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)).

"Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

Plaintiff provides no details regarding the incident with Alkelhougie. Plaintiff's conclusory statements are insufficient to state a claim. This is particularly true where, as here, it appears that the incident was precipitated by Plaintiff throwing something at staff. Plaintiff previously was advised of this defect but nonetheless has failed to allege additional facts regarding this incident that would support a constitutional claim. Further leave to amend appears futile and should be denied.

**F.     Linkage**

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff has not alleged any unconstitutional conduct on the part of Defendants Perryman, Hanson, Lopez, Bernard, or Price. His complaint states no facts regarding these Defendants. Plaintiff previously was advised of the requirement that he provide sufficient facts to link each of the Defendants to a constitutional violation. He has not done so. These Defendants should be dismissed and further leave to amend should be denied.

**V.     Conclusion and Recommendation**

Plaintiff's first amended complaint alleges cognizable FIrst Amendment free exercise claims against Defendants Bell and Bigot. His remaining allegations do not state a cognizable claim. Further leave to amend appears futile and should be denied.

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff proceed on his First Amendment free exercise claims against Defendants Bell and Bigot;
2. All other claims asserted in the second amended complaint and all other defendants be DISMISSED with prejudice, and

      3.      Service be initiated on Defendants Bell and Bigot.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   November 15, 2016           /s/ *Michael J. Seng*
                                                                 UNITED STATES MAGISTRATE JUDGE