UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD S. KINDRED, | Case No. 1:14-cv-01652-AWI-JDP |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT COURT GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CLIFF ALLENBY, *et al*., | OBJECTIONS DUE IN 14 DAYS |
| Defendants. | ECF No. 120 |

Plaintiff Richard S. Kindred is a civil detainee proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. Kindred alleges that defendants Kenneth Bell and Marisa Bigot, both employees at the California Department of State Hospitals Coalinga facility ("Coalinga"), denied him materials needed for practicing his Native American religion in violation of the First Amendment. *See* ECF No. 15 at 7-9. On December 6, 2018, Bell and Bigot moved for summary judgment under Federal Rule of Civil Procedure 56, arguing that Kindred lacks standing, that Kindred cannot demonstrate that a First Amendment violation occurred, that the defendants caused no injury, and that defendants are entitled to qualified immunity. *See* ECF No. 57. Kindred filed a short opposition on February 14, 2019, and the defendants filed a reply on February 22. *See* ECF Nos. 126 and 127.[1]

---

[1] As required by *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), plaintiff was provided with notice of the requirements for opposing a summary judgment motion via an attachment to defendant's motion for summary judgment. *See* ECF No. 120 at 2.

1

I recommend granting defendants' motion for summary judgment. Even if we accept Kindred's version of facts as true, his First Amendment claims fail as a matter of law. Assuming Bigot and Bell denied Kindred certain materials, those denials—pursuant to undisputed Coalinga policies that require the exercise of some discretion—would not amount to a First Amendment violation. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that, when a facility policy impinges on detainee constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests"). Because there can be no First Amendment violation, I do not reach defendants' other grounds for granting summary judgment.

## I. Factual Background

Richard Kindred is a civil detainee housed at Coalinga under California's Sexually Violent Predator Act. ECF No. 119 at 7. He practices a Native American religion for which he uses a variety of herbs, animal materials, and other items. *Id*. Coalinga, however, does not allow detainees unfettered access to outside materials and has policies and procedures designed to limit access to contraband and to ensure the safety and security of the facility. *Id*. at 1.

Kindred's second amended complaint alleges that Bell denied him "sacred/spiritual items" that "are used in the daily lives of those practicing the Native American Way of Life (Religion)." ECF No. 15 at 7.[2] These included osha root, lavender, a turtle rattle kit, assorted needles, cedar, bearberry leaves, spearmint leaves, peppermint leaves, and white sage. *Id*. at 8. Kindred's complaint likewise alleges that Bigot denied him certain items, including horse hair and leather. *Id*. at 9. On February 9, 2018, Kindred filed an "addendum" to his complaint, alleging that Bell also denied him certain additional materials, including bolo ties and some additional herbs. *See* ECF. No. 73.

---

[2] The court may consider Kindred's allegations based on his personal knowledge and made under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); ECF No. 15 at 16; ECF No. 73 at 6.

Kindred argues that many of the items Bell and Bigot denied him were in fact allowed under prison policies, or at least not specifically prohibited. *See* ECF No. 15 at 8-9; *see also* ECF No. 73 at 5 ("None of these items are specifically listed in either the Statewide Contraband List or the DSH-C Contraband List."). But the record shows otherwise.[3] Coalinga policies restrict Kindred's access to certain items. These include policies that limit patient access to unlabeled or unsealed packages; policies that require the inspection of patient mail; policies that prohibit patient access to fruit and vegetable seeds that might be used to make alcohol; and policies that limit patient access to items that might be used as weapons. *See* ECF No. 119 at 1-12. In addition, Kindred does not dispute that Coalinga hospital administrators had discretion in applying these policies. *See* ECF No. 126 at 2 (stating that the relevant written policy "is unable to fully describe a list of all the herbs used by Native Americans and [is] unfamiliar [with] what each herb looks like or is used for").

**II. Standard of Review**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The disputed fact is material if it "might affect the outcome of the suit under the governing law." *See id.* at 248.

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the

---

[3] For example, Kindred relies on Coalinga's Administrative Directive No. 642, which provides that a patient could have an animal bone "up to 4" inches, but the elk antler that he tried to obtain was over 4 inches. *Compare* ECF No. 73 at 10, *with* ECF No. 119 at 9, *and* ECF No. 126 at 3, ECF No. 119-1 at 88-89. Likewise, Kindred insists that he could have beading needles, but the pertinent regulation prohibited patients from possessing beading needles, except under supervision during a structured beading/leather work group. *Compare* ECF No. 15 at 8, *with* ECF No. 73 at 10, *and* ECF No. 120-2 at 3-4, *and* ECF No. 120-3 at 14, *and* ECF No. 120-4 at 4. Similar deficiencies appear throughout Kindred's version of facts, and we need not list every deficiency here.

allegations or denials in its pleading, *Anderson*, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

In making a summary judgment determination, a court "may not engage in credibility determinations or the weighing of evidence," *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted), and it must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

Defendants have met their burden of showing the absence of a genuine issue of material fact, and Kindred has not shown that there are issues for trial.

**III. Analysis**

The First Amendment of the United States Constitution protects the free exercise of religion. Government detainees of all kinds are still protected by this right, albeit in a manner that requires balancing a detainee's right against the practical realities of running a custodial facility. In the prison context, the Supreme Court articulated the contemporary framework for balancing constitutional rights against practical realities in *Turner v. Safley*, 482 U.S. 78. *Turner* offered a four-factor test for determining whether a prison regulation that burdens a constitutional right is "reasonably related to legitimate penological interests" and, thus, constitutional. *Id*. at 89. First, *Turner* requires that I look at whether there is a "valid, rational connection" between the regulation and the government interest; second, I must examine whether there are "alternate means" for the detainee to exercise the right in question; third, I must consider the effects that the desired accommodation would have on third parties and facility resources; and, fourth, I must look at whether there are "ready alternatives" to the regulation in question. *See id*. at 89-91. The *Turner* framework applies to civil detainees like Kindred as well as to prisoners. *See, e.g.*, *Herrick v. Strong*, 745 F. App'x 287 (9th Cir. 2018); *Hydrick v. Hunter*, 500 F.3d 978, 991 (9th Cir. 2007), *judgment vacated on other grounds*, 556 U.S. 1256 (2009); *Lyon v. U.S. Immigration & Customs Enf't*, 171 F. Supp. 3d 961, 985 (N.D. Cal. 2016).

*Turner* applies here because Kindred was denied materials pursuant to Coalinga policies. Indeed, all available evidence suggests that this is what happened, and no reasonable factfinder could conclude otherwise. While Kindred claims that many of the items he desired are in some circumstances *permissible*, he does not contend that employees at Coalinga lacked the discretion to deny or limit his access to unlabeled or potentially hazardous items, or lacked an obligation to enforce other Coalinga policies.

All four *Turner* factors point in favor of the defendants. First, Coalinga's policies of restricting access to unlabeled and potentially dangerous items is validly related to the facility's interest in the health and safety of patients and employees. Second, Kindred has numerous alternate means by which he can exercise his right to practice his religion. He has access to religious services and a spiritual advisor; he has access to many herbs and materials to produce sacred Native American items; and he has potential access to even more plant materials—if he attempts to obtain them in labeled and sealed packages. Third, Kindred's implicitly desired accommodation—the ability to access currently impermissible materials or unlabeled ones—would have deleterious effects on other employees and detainees at Coalinga, as it would effectively end the facility's policies of restricting access to unknown or potentially dangerous materials. Fourth, I do not see ready alternatives to Coalinga's policies that would strike a better balance between Kindred's free exercise rights and the facility's legitimate interest in promoting health and safety through an administratively feasible policy. For these reasons, Coalinga's policies were constitutionally valid as applied to Kindred, and Kindred has no valid First Amendment claim against Bell and Bigot.

This result accords with both the background motivations of the *Turner* test and with how courts in the Ninth Circuit have applied it. The *Turner* court was wary of "[s]ubjecting the day-to-day judgments" of government officials "to an inflexible strict scrutiny analysis [that] would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems" that arise in the context of government detention. *Turner*, 482 U.S. at 89. A more restrictive test, the *Turner* Court reasoned, would "distort the decisionmaking process, for every administrative judgment would be subject to the possibility

that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand." *Id*. The reluctance to police the administrative decisions of officials overseeing government detention is why the Ninth Circuit has, in similar contexts, upheld summary judgment in favor of defendants. *See Sefeldeen v. Alameida*, 238 F. App'x 204 (9th Cir. 2007) (upholding summary judgment against Islamic plaintiff alleging that vegetarian prison diet violated the First Amendment); *Henderson v. Terhune*, 379 F.3d 709 (9th Cir. 2004) (upholding grant of summary judgment against Native American plaintiff alleging that prison limitation on hair length violated the First Amendment); *Standing Deer v. Carlson*, 831 F.2d 1525 (9th Cir. 1987) (upholding grant of summary judgment against Native American prisoners alleging that prison regulation banning headgear violated First Amendment); *Allen v. Toombs*, 827 F.2d 563 (9th Cir. 1987) (upholding grant of summary judgment against Native American prisoners alleging that prison policy limiting prisoner access to "sweat lodge" violated First Amendment).[4]

## IV. Findings and Recommendations

For the foregoing reasons, I recommend that:

1. The court grant in defendant's motion for summary judgment, ECF No. 120.

2. The court grant judgment in favor of defendants and close the case.

These findings and recommendations are submitted to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. Within fourteen days of the service of the findings and recommendations, the parties may file written objections to the

---

[4] Kindred has brought First Amendment claims but not claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA requires that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" unless the government can establish that the burden "is in furtherance of a compelling governmental interest" and uses the "least restrictive means." 42 U.S.C. § 2000cc-1(a). While I do not express a view on the merits of such a claim, I note that it would be petitioner's initial burden to show that the restrictions and administrative decisions in question imposed a "substantial burden" on his religious beliefs. *See Sefeldeen*, 238 F. App'x at 205-6.

findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). If the parties fail to file objections within the specified time, they may waive their rights to object to factual findings on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: August 23, 2019

_____
UNITED STATES MAGISTRATE JUDGE

No. 205